## FAY *et al. vs.* STEAMER NEW WORLD.

A common carrier is not liable for the loss of goods entrusted to him for carriage where it is understood that he is to receive no compensation for the carriage, and where he has exercised ordinary diligence in taking care of them ; in such case he is liable only as a bailee without hire.

A., a merchant of Sacramento, was in the habit of having gold dust carried gratuitously on the steamer *New World*, from that place to San Francisco, the owners of the steamer refusing to carry it for hire, or to become liable, as common carriers, in case of loss ; *Held*, where a quantity of gold dust, belonging to the plaintiffs, was stolen from the steamer, without any negligence on the part of the master and officers, that the plaintiffs could not recover its value.

Fay *v.* Steamer New World.

Whether a common carrier of *goods and passengers merely*, can be made liable in an action for refusing to carry *gold dust :* Query ?

APPEAL from the superior court of the city of San Francisco. This was a proceeding under the Act to provide for the collection of demands against boats and vessels, passed April 10, 1850. The superior court gave judgment in favor of the plaintiffs, from which judgment this appeal was taken. The material facts are given in the opinion of the court.

*George F. Noyes*, for the plaintiffs.

*A. T. Wilson*, for defendant.

*By the Court*, LYONS, J. The question presented in this case is, are the owners of the steamer *New World* liable, as common carriers, for three thousand dollars' worth of gold dust, lost under the following circumstances? Plaintiffs, on the 28th day of September, a short time before the departure of the steamer from Sacramento city, delivered to the clerk thereof a package of gold dust, containing $3000, the property of plaintiffs, and $500 belonging to other parties, to be taken to San Francisco. The steamer is used for the transportation of passengers and freight between the two cities named. It appears that the officers have always refused to receive coin, gold dust, or bullion as freight; and that, to all persons indiscriminately, as well as to these plaintiffs, the clerk has given actual notice that he would receive gold dust or money only on condition that no charge should be made and no responsibility incurred. Plaintiffs made their shipment as above, after having this notice. The vessel arrived at San Francisco at about eleven o'clock, P. M. The clerk seems to have exercised due diligence and precaution, for he locked his office and instructed the watchman to guard it. The safe was full; and the package of plaintiffs, as well as the funds of the boat, was in the office, not in the safe. The same night, the office was broken open, and all the money not so secured was stolen. It appears that plaintiffs had been in the habit of shipping their funds through certain express

offices, but had discontinued that practice from motives of economy; the *New World*, as before stated, consenting to carry valuables without charge, if the owner incurred all risk of loss. They seem to have assented to these conditions, and arranged with the clerk of the *New World* to forward by him their money packages.

Plaintiffs were used to transport their freight on this steamer from San Francisco to Sacramento; and it is contended that this is sufficient consideration for the conveyance of the valuables not specially charged for. If this had been stipulated between the parties, or if the agents of the steamer had made a distinction between those who shipped, paying freight, and those who did not, carrying the gold dust of those only of the first named class, the defendants might perhaps be liable; but the evidence shows that the clerk made no such distinction, but refused to receive gold dust from all persons indiscriminately, except upon the conditions before named, receiving no compensation, and declining all risk. Common carriers, it is true, cannot abridge their liability by notice through newspapers, or otherwise, but this case does not come within that rule. Here, there was a special contract with the clerk of the steamer, well defined and understood, that he would receive the treasure, charge nothing for its conveyance, and incur no liability in case of loss. If the conditions imposed did not suit plaintiffs, they might have declined them. But it has been urged that, being a common carrier, the boat, *as such*, was obliged by law to receive the treasure, with the responsibility that attaches to common carriers, with or without compensation. If such, indeed, were the law, and the duty of receiving freight of every character be imposed on the carrier, then, in case of refusal to comply with this obligation, an action for damages might lie. In the case at bar, the imposition of conditions was equivalent to a refusal; but whether it is the duty of a freight and passenger steamer to receive and transport property of every character which may be offered, is a question which need not be determined in this case. The defendants are sued as common car-

riers, and hence, their liability as bailees without hire is not to be examined.

Judgment reversed.